Okay, when do you write him? Thank you, Your Honor. May it please the Court, my name is Jeff Price, I represent the appellant in this case. And if you could keep your voice up and articulate, that would help me. And I would like to, I will, and I would like to reserve four minutes for rebuttal. Okay, keep your eye on the clock, yeah. So, in this case, Mr. Wusstig is an innocent person who was indicted by a federal grand jury and imprisoned for approximately seven months. It is undisputed that he is not the George who appeared on the wiretaps and who was trafficking drugs in Long Beach. And it is undisputed that Mr. Wusstig does not match the description of the George who was the drug trafficker, who was a target of a joint federal-local task force. Just help me understand how disparate the descriptions were of the true Mr. George compared to your client. Mr. Wusstig, my client, is six feet, one inch, weighs about 245 pounds, and he was about 37 years old in 2008. And the quote-unquote George on the wiretaps was described by an informant to the defendant as being five foot, eight inches, medium body type, and 45 to 50 years old with a pockmarked face. Okay. So, I'm going to focus on the 56D argument where the district court found that there was a lack of diligence and futility in my request for additional time to conduct discovery, namely to conduct a deposition of the AUSA in the case Jane Kim. And the reason that I was diligent is that I could not simply notice the deposition of Ms. Kim because she's a federal prosecutor, so it was required that I go through the to-he process, which can be a lengthy process, can take easily 30 to 60 days in order to get final approval from the Department of Justice in Washington. So, let me get the timeline in terms of when you started the process to take the deposition of Ms. Kim. So, the timeline is this, Your Honor. The third amended complaint was filed on October 10, 2013. The answer was filed on October 25, 2013. The summary judgment motion was filed on February 13, 2014, so three and a half months later, with the holidays in the middle. I was involved in a trial before Judge Walter in the Central District. Judge Walter is very well known for having extremely strict requirements. In his cases, he has a 32-page scheduling order. He requires that you do a lot of things that are well beyond the local rules. No, I get it. You're busy. But I want the timeline in this case. So, the timeline was that the motion was filed a mere three and a half months after the answer, where actually it was, right, it was three and a half months after the answer to the complaint was filed. Okay, when the summary judgment motion is filed, what had you done, if anything, to initiate the process to take Ms. Kim's deposition? I had contacted, this is not in the record, but I had contacted the AUSA's office, the United States Attorney's office, in an attempt to talk about the TUHE process, but I just didn't have the time to do it. Okay, and what would Ms. Kim have given you in a deposition? And I'm here going to let you speculate in an optimistic sort of way. What did you hope to find out? Well, I wanted to say also that this was a large interagency investigation of a large drug trafficking network. There were tens of wiretaps. The wiretap in this case was TT4. The investigation was going on for about three years, and there were hours and hours of wiretaps with George on the wiretap. And Detective Robertson was the case agent on this part of the case. He was the one who was responsible for the wiretaps on this part of the case for TT4, and he was listening to the wiretaps. So he was well aware of what was going on. But what I wanted to say in response to the question is that pretty much the only thing that Robertson could have legitimately told Kim about Wustig was that he was arrested at 1333 34th Street in October 2005 and that he was convicted of possession of methamphetamine shortly thereafter. That is the only actual factual fact about it. Go ahead, please. Counsel, other than the house location being the same as the one where all of this drug activity was allegedly occurring, you also had another element that this fellow Colorado, who was a known target of that investigation by Detective Robertson, Wustig admitted, didn't he, that he knew Colorado? Colorado was even present, I believe, when Wustig himself was arrested from that house. So isn't that an additional fact? Well, that's the fact I just mentioned, is that in October of 2005, Mr. Wustig was arrested at that house. That was three years, that was two and a half years prior. So, but, you know, that is the fact that Robertson is basing his entire... And that Colorado was present when Wustig was arrested back then for methamphetamine. Yes. But that's the entire fact. And when you talked, when you answered Judge Fletcher's question earlier about resemblance of George and your client, doesn't the record say that George is also described as a male Filipino subject to late 40s to early 50s, male or Asian, approximately 5'10", 240 pounds, even though Wustig's ethnicity may not be clear here? His other physical characteristics resemble description of George in the sense that he admits that in 2008 he was 39 years old, 6'1", approximately 240 pounds. That description... ER 249 and 323. That description that was just read was in the DEA 06. That was given by another detective in the Long Beach Police Department allegedly observing the George. So you put all of these together, as well as the grand jury indictment, which assumes probable cause by the grand jury. And assuming that Detective Robinson's process leading to the indictment, information given for the indictment to the grand jury, was done in the fashion as described, it doesn't require him to be perfect, right? No, but the only two facts that Robinson could have given to Kim that were... Him who? The old facts were the ones that I read, so... Given him, you said Robinson could have given to... Kim, the AUSA. Okay, okay. So any other facts that he would have or did give to her would have been false. And I would have discovered that by taking her deposition. Well, it was incorrect after the fact, right? When he went to the CI and the CI said, in the photographs, that's not him? Absolutely. He went to the CI and he immediately discovered... So are we imposing another obligation that you've got to go to your CI to corroborate George despite... Well, sure. He did nothing. He did nothing, Your Honor. He did absolutely nothing at all but see that George Wusting had been arrested three years before. That's all he did. And then he just went out and got him arrested. He did nothing else. Okay, you wanted to save some time. We've got you down to about a minute. Let's hear from the other side and then you will have some time. Thank you. Thank you, Your Honor. It's the police report. With regards to Detective Robertson, clearly he had sufficient information with regards to the location of the prior arrest in 2005, the connection to Kano, the fact that he had the picture, driver's license picture, albeit not a great picture but it's something that there was a semblance of that person being at the location and that information was transmitted to ASUA Kim. There's been no information here or I should say no evidence given here that that in and of itself would be insufficient to support probable cause or to allow Ms. Kim to make a decision to whatever she wants, which I think is a relevant situation here. This is a malicious prosecution and Detective Robertson wasn't in charge of either initiating the prosecution nor continuance of. And in fact, the delays with regards to the bail hearing and the voice announcement and all that stuff, I mean, ultimately what happened here, yes, there was a mistake. That's not a constitutional violation and that's not maliciousness. There was a mistake and in fact, Detective Robertson originally believed that George Wustig was the perpetrator of the crime that he was. Your opponent says, however, when Mr. Wustig said, that's not me, I'm not that person on that wiretap conversation, that Detective Robertson should have done more. He says he didn't do anything. Do you agree with that? I agree that a person who is facing a criminal conviction or criminal prosecution may plead his innocence. That doesn't necessarily mean that they are innocent. I think what you have to step back and look at is the probable cause in here. In fact, there was a grand jury indictment, so clearly there was probable cause. And that wasn't only based upon what Detective Robertson said. Detective Robertson wasn't even involved in the grand jury proceeding. I don't think you answered the question. I'm sorry? I don't think you answered the question. Okay. Perhaps I was inoffensively stating it. Was there a duty on the part of Robinson, a constitutional duty on the part of Robinson, once confronted with Wustig's denial that I'm George, to investigate that? I don't believe that there is any post-indictment requirement of investigation. I think that when the voice analysis came in, Detective Robertson was trying to do the right thing and did some additional checking and found out that, in fact, it wasn't. But there's no duty on Detective Robertson's part to go out and investigate just because the arrestee says he was innocent. With regards to that, I don't think . . . he really didn't even argue. I think the brief supports the affirmance of the district court's decision on the summary judgment. With regards to the 56D motion, again, the timeline is a little bit skewed. Mr. Price happened to be Wustig's counsel from the beginning. The original complaint was filed on July 9th of 2012, so there was clearly sufficient time had he wanted to seek out a deposition of an AAU USA to complete whatever requirements were necessary for him to do it. Although you have to say this case did go pretty fast. Well, it was originally filed in July of 2012. It was a Third Amendment complaint that came about in October of 2013. So once that was done, the federal agents were dismissed out, the U.S. government was dismissed out, and that just left the city of Long Beach and its detective, and we proceeded to work up the summary judgment motion because it was a trial date of May. So when did discovery begin? Well, I presume . . . Did it begin with the filing of the initial complaint? I think appropriately they could have begun discovery at the time of the initial complaint. They could have begun the process there. I don't think he was precluded from trying to get discovery done pending the . . . Typically the district judge will set up a discovery schedule. When did that happen? I don't have that date, Your Honor. Okay. Maybe your adversary will. Yeah. If you'll give me a moment, I'll try to see if I can see when the discovery schedule was. Okay. Listen, if you can't find it right away, don't worry about it. I can't find it, Your Honor. Okay. I'm sorry. Well, the other side may know. I don't have that information. The bottom line is I don't know what action, if any . . . I don't recall any action being taken to set it up. I do recall that there was some conversations with the AUSA that was defending the federal agents in this case. But again, the deposition never took place. More importantly, I think as Judge Wilson pointed out, the declaration is clearly insufficient as to what was going to be said. Even if whatever was said, said, it doesn't necessarily mean that it precluded or showed that Detective Robertson did something wrong. Detective Robertson provided information to ASUA Kim. ASUA Kim made the decision with her prosecutorial judgment, independent judgment, and decided to move forward with the grand jury. The indictment was signed by a magistrate, and I don't believe that the declaration to support the 5060 request was sufficient in any event. Any other questions? Any further questions from the bench? I think not. Thank you. All right, I'll reserve this one. Thank you. You've saved a minute. Thank you. So I wanted to point out that with respect to AUSA Kim, she had the power to dismiss the case or take other actions. For example, in September, when I filed a motion for review of bail, that was opposed by Robertson and opposed by AUSA Kim because Opposed by Robertson? He's the detective. I mean, he's not filing papers. There were e-mails back and forth. There was communication. Robertson actually met me at the bail hearing, and he told me that Wustig is the right guy. The only time Robertson started doing something in this case is after I got a voice exemplar expert to analyze my client's voice and the voice on the wiretaps, and that was conclusive. Well, and on that, I have to say I congratulate you. That worked. Good job. Thank you. So the point about what Kim would say is that she could testify that Robertson kept telling her, no, no, Wustig's the right guy, Wustig's the right guy, opposed bail, do this, do that. Only after I got the voice exemplar did Kim then say, okay, we'll let him out, and ultimately the case was dismissed. Do you know offhand the answer as to when the discovery order was entered by the district judge? I was looking for the scheduling order. I believe Judge Wilson issued a scheduling order around the time that I filed the Third Amendment complaint. But the important thing is there were several motions to dismiss that were before that. There was a motion to dismiss by the government, a motion to dismiss by Long Beach. There was a First Amendment complaint, a Second Amendment complaint, and then finally a Third Amendment complaint. So conducting discovery during that period of time was, you know, it's possible that I could have done it, but it wasn't really efficient in the context of the case. I got it. Okay. Thank you. Thank you. Wustig v. Robertson submitted for decision. Thank you, both sides, for your helpful arguments.
judges: W. Fletcher, Gould, Lemelle